UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE HARMONY CENTER, LLC

VERSUS

BOBBY JINDAL, ET AL

CIVIL ACTION

NO. 10-621-BAJ-CN

### RULING ON MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss (doc. 13) filed jointly by defendants Bobby Jindal, the State of Louisiana, and the Louisiana Department of Children and Family Services.  Jurisdiction is alleged pursuant to 28 U.S.C. §1331, federal question.

### BACKGROUND

Plaintiff, The Harmony Center, Inc. ("Harmony Center"), filed the instant suit on September 16, 2010 against Bobby Jindal ("Jindal"), in his official capacity as governor of Louisiana, the State of Louisiana ("the State"), and the Louisiana Department of Children and Family Services ("DCFS").[1] Harmony Center is a non-profit corporation which operates residential facilities for children and youths. Harmony Center entered into separate contracts with the State to operate ten residential child services and group home facilities.[2]  Each of these facilities holds

---

[1] The Louisiana Department of Children and Family Services is the former Louisiana Department of Social Services.  See, La. Legislature Reg. Session Acts 2009, No. 194.

[2] The contracts furnished as exhibits by the plaintiff are between Harmony Center and the Louisiana Department of Social Services, Office of Community Services and the and Louisiana Department of Public Safety and Corrections, Youth Services Division.

a separate license issued by DCFS.  DCFS revoked four of the licenses held by

Harmony Center's facilities pursuant to La. R.S. 46:1419 (Acts 2009, No. 194 §2).[3]

Harmony Center alleges that La. R.S. 46:1419 is unconstitutional pursuant to Article

I, Section 10 of the United State Constitution ("Contracts Clause") because it

"impairs/interferes with contractual obligations entered into between plaintiff and the

State."[4] Harmony Center further alleges that the statute violates the Fourteenth

Amendment, because application of the statute has resulted in license revocation

for "any alleged infraction, no matter how minute, without notice, an opportunity to

be heard, or any rational relationship to any state purpose."[5] Harmony Center further

claims the statute is "vague, overly broad, and is neither reasonable, nor necessary

to support an important state purpose."[6] Harmony Center moved for a temporary

restraining order and a preliminary injunction to enjoin defendants from enforcing La.

R.S. 46:1419 to revoke any of its remaining licenses pending the Court's ruling on

the merits of the case.  The Court issued an order denying Harmony Center's motion

for a temporary restraining order on September 23, 2010.[7] Defendants filed the

---

[3] The licenses held by the following of Harmony Center's facilities have been revoked: The Oaks Group Home, revoked July 30, 2010; Longfellow Group Home, revoked July 30, 2010; Hadley Group Home, revoked June 18, 2010; and Focus Group Home, revoked August 12, 2010.

[4] Plaintiff's Complaint, ¶VII

[5] Plaintiff's Complaint, ¶XI

[6] Plaintiff's Complaint, ¶XIV

[7] The Court has deferred ruling on Harmony Center's motion for preliminary injunction due to the unresolved issue of the Court's jurisdiction over the defendants in this matter.  See, *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985) (holding that

present Motion to Dismiss on October 28, 2010. Harmony Center has filed an opposition. (doc. 14)

## LAW AND ARGUMENT

Defendants have filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), urging the Court to dismiss the Harmony Center's complaint against them on several grounds. Specifically, defendants submit that this Court's jurisdiction over the named defendants is barred by the Eleventh Amendment to the United States Constitution, that Harmony Center lacks standing to challenge the constitutionality of the statute at issue, and that Harmony Center has failed to state a claim for which relief may be granted.[8]

### I.    Jurisdiction over the State and DCFS in Federal Court

The first of defendants' motions to dismiss raises the issue of the State's and DCFS's immunity from suit in a federal court pursuant to the Eleventh Amendment to the United States Constitution, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

---

the district court should not have issued a preliminary injunction without determining whether it had jurisdiction over the party enjoined).

[8] Defendants style their motion to dismiss on the basis of Eleventh Amendment immunity as a motion pursuant to FRCP 12(b)(6). However, the Fifth Circuit Court of Appeals has treated the Eleventh Amendment as a limitation on subject-matter jurisdiction. *See*, *U.S. v. Texas Tech University*, 171 F.3d 279, 286 (5th Cir. 1999), *cert. denied*, 530 U.S. 1202, 120 S.Ct. 2194, 147 L.Ed.2d 231 (2000). Accordingly, this Court construes defendants' motion to dismiss grounded on Eleventh Amendment immunity as a motion pursuant to FRCP 12(b)(1).

> States by Citizens of another State, or by Citizens or
> Subjects of any Foreign State.

Defendants maintain that the Eleventh Amendment bars a suit by a private party against a state in federal court, including claims brought under pendant jurisdiction. Defendants further argue that the Eleventh Amendment is applicable to the State and extends to DCFS as an alter ego or arm of the state. In opposition to defendants' motion to dismiss, Harmony Center submits that the State has explicitly waived its Eleventh Amendment immunity with regards to liability in contracts pursuant to Louisiana Constitution Article 12, Section 10(A), which provides:

> Section 10.(A) No Immunity in Contract and Tort. Neither
> the state, a state agency, nor a political subdivision shall
> be immune from suit and liability in contract or for injury to
> person or property.

"Under the Eleventh Amendment, an unconsenting State is immune from suits brought in federal court by [its] own citizens as well as citizens of another state." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 418, citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Supreme Court has held that the rule that "a State may not be sued without its consent is [such] a fundamental rule of jurisprudence ... that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given...." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal

4

court" *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996), citing *Puerto Rico*

*Aqueduct and Sewer Authority v. Metcaff & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct.

684, 687-88 (1993). Accordingly, in order for this Court to exercise jurisdiction over

the State or DCFS, it must find that the State has waived its Eleventh Amendment

immunity or consented to the jurisdiction of this Court.

The United States Supreme Court has recognized that an individual may sue

a state only in two instances: where Congress abrogates the states' immunity by

authorizing such a suit in the exercise of its power to enforce the Fourteenth

Amendment, or where a state at its pleasure waives its sovereign immunity by

consenting to suit. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir.

2005).   The sovereign's decision to waive its immunity must be voluntary. *Id*.

"Generally, the Court will find a waiver either if (1) the state voluntarily invokes

federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends

to submit itself to federal court jurisdiction." *Id*.

Defendants have objected to this Court's jurisdiction; however, if the Court

determines that the State has evidenced a clear intent to submit itself to federal court

jurisdiction, the Court may nonetheless assert jurisdiction over the State and DCFS.

"A state makes a clear declaration of its intent to waive Eleventh Amendment

immunity only where stated 'by the most express language or by such overwhelming

implication from the text as will leave no other room for any other reasonable

construction.'" *Sullivan v. University of Texas Health Science Center*, 217 Fed.Appx.

391, 393 (5th Cir. 2007), quoting *Edelman v. Jordan*, 415 U.S. 651, 673 94 S.Ct. 1347, 39 L.Ed. 662 (1974).  The United States Supreme Court has distinguished between a State consenting to be sued and giving its consent to being sued in a federal court.  "A state does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts." *Port Authority Trans-Hudson Corp. v. Feeney*, 110 S.Ct. 1868, 1873, 495 U.S. 299, 109 L.Ed.2d. 264 (1990).  A statutory provision giving a state's consent to being sued "might be interpreted to encompass the state's consent to suit in federal court as well as state court," or may "reflect only a state's consent to suit in its own courts." *Id*. Considering the uncertain scope of these provisions, the Supreme Court "has construed such ambiguous and general consent to suit provisions, standing alone, as insufficient to waive Eleventh Amendment immunity." *Id*.

Turning to the merits of the present case, Harmony Center argues that the Supremacy Clause (Art. VI, Section I) of the United States Constitution supersedes and invalidates any contrary state laws, including La. R.S. 46:1419.  The merits of Harmony Center's suit may involve application of the Supremacy Clause, but the threshold issue is whether the Court may exercise jurisdiction over the defendants named in the lawsuit. This jurisdictional issue does not implicate the Supremacy Clause.  The question is simply whether the Eleventh Amendment bars Harmony Center's suit against the State and DCFS.

In opposition to the defendants' claim of Eleventh Amendment immunity,

Harmony Center quotes the Fifth Circuit's decision in *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001), which held that "the exception to this rule [that the Eleventh Amendment bar against suits by private citizens] allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute." The Court addresses the propriety of its jurisdiction over the named state official, Governor Jindal, separately below. However, a private party's ability to maintain a suit against a state official to enjoin an unconstitutional state statute does not confer jurisdiction over the State itself, nor one of its agencies. "A plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself." *Okpalobi* at 412.

The Court finds that the immunity afforded by the Eleventh Amendment is applicable to the State and DCFS, and serves as a bar to Harmony Center's suit against these defendants. The Court does not find that Article 12, Section 10(A) of the Louisiana Constitution operates as a waiver of the State's or DCFS's Eleventh Amendment immunity. As noted by the Supreme Court in *Feeney*, *supra*, a statutory provision indicating a State's consent to suit may only indicate its consent to being sued in its own courts, rather than in a federal court. In accordance with *Feeney*, this Court resolves the ambiguity of the State's constitutional provision in favor of preserving the immunity afforded by the Eleventh Amendment. This decision is bolstered by La. R.S. 13:5106(A), a Louisiana statute which provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any

7

court other than a Louisiana state court."

## II.   Jurisdiction over Governor Jindal

While the Eleventh Amendment generally bars suits by private parties against a state and its agencies, federal courts have recognized the right of a private party to bring a suit against a state official to enjoin the official from enforcing an unconstitutional statute against the party. *See*, *American Bank and Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920 (5th Cir. 1993). The right of private parties to maintain such suits against state officials was established in the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  Since the rendition of the *Young* decision, the courts of appeal have expounded on the scope and application of the *Young* exception.  Recently, the Fifth Circuit examined the *Young* exception at length in the case of *Okpalobi v. Foster*, *supra*.  As in the present case, *Okpalobi* involved private parties who challenged the constitutionality of a Louisiana statute.  The plaintiffs in *Okpalobi* named as defendants the governor and attorney general of the State of Louisiana. Finding the statute at issue unconstitutional, the district court entered a judgment enjoining the defendants from enforcing the statute against the plaintiffs. The issue on appeal was "whether the *Young* fiction requires that the defendant state official have some enforcement powers with respect to the particular statute at issue, or whether the official need have no such enforcement powers and need only be charged with the general authority and responsibility to see that all of the laws of the state be faithfully

8

executed." *Okpalobi*, at 416.

The Fifth Circuit concluded that *Young* affirmatively requires the named state official to have enforcement power with respect to the particular statute in question. Reviewing both *Young* and its proceeding jurisprudence, the Fifth Circuit declared:

> *Young* solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while simultaneously emphasizing the requirements that the officers have 'some connection with the enforcement of the act' in question or to be 'specially charged with the duty to enforce the statute' and be threatening to exercise that duty.

*Id.* at 414-415, quoting *Young* at 157-58, 28 S.Ct. 441.

In the present case, Harmony Center contends that Governor Jindal "is the chief executive officer of the state" and that "[t]he executive branch of Louisiana's government, of which DCFS is part, is responsible for the administration and enforcement of the state constitution and laws passed by the legislative branch."[9] In opposition, defendants assert that Harmony Center "does not allege any particular act on the part of Governor Jindal, does not cite any provision of law that gives the Governor any particular duty to enforce the statute, and does not allege that Governor Jindal is threatening or is about to commence proceedings to enforce the allegedly unconstitutional act."[10]

The Court agrees that there is a lack of enforcement connection between

---

[9] Plaintiff's Complaint, ¶ IV

[10] Defendants' Motion to Dismiss, p. 5

Governor Jindal and statute at issue. La. R.S. 46:1419 vests in DCFS "the power to deny, revoke, or refuse to renew a license." Harmony Center asserts that as the chief executive officer, Governor Jindal "administers the programs and operations of state government" and that DCFS is "under the control of" Governor Jindal.[11] However, other than these general statements, Harmony Center does not show any relationship between Governor Jindal and DCFS. In its opposition to defendants' motion to dismiss, Harmony Center cites Louisiana Constitution, Art IV, Section 5(A), which states that the governor "shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed." This is the type of general authority which the *Okpalobi* court found to be insufficient for the purposes of the *Young* exception. Finding that Governor Jindal has no connection to the enforcement of La. R.S. 46:1419, other than the general duty of La. Const. Art. IV, Section 5(A) to enforce all laws of the State and the United States, and in accordance with the Fifth Circuit's decision in *Okpalobi*, this Court determines that the *Young* exception is not applicable to Governor Jindal.  Therefore, the immunity afforded by the Eleventh Amendment is applicable, and prevents the Court from exercising jurisdiction over Governor Jindal in the present matter.

---

[11] Plaintiff's Complaint, ¶¶ XII, XIII

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the State of Louisiana, the Louisiana Department of Children and Family Services, and Bobby Jindal in his official capacity as governor of the State of Louisiana for lack of subject-matter jurisdiction is hereby **GRANTED**.

Baton Rouge, Louisiana, November 30, 2010.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA